# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Air Serv Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 10882 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| Service Employees | ) | |
| International Union, Local 1, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Air Serv Corporation ("Air Serv") has sued Defendant Service Employees International Union, Local 1 ("the Union"), which represents Air Serv employees who are assigned to work at the Chicago O'Hare International Airport. Air Serv alleges violations of the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, and moved for a temporary restraining order and preliminary injunction enjoining the Union's officers, agents, and members from engaging in a strike or similar concerted action. For the reasons stated herein, as well as for the reasons stated on the record during a hearing held by this Court on November 28, 2016, Air Serv's motion for a temporary restraining order and preliminary injunction is denied.

## Factual and Procedural Background

Air Serv is a Georgia corporation that provides aviation-related services to commercial airlines at approximately fifty airports nationwide. Compl. ¶ 13, ECF No. 1. Included among these airports is the Chicago O'Hare International Airport ("ORD"), where Air Serv employs approximately five hundred employees who

provide services to United Continental Holdings, Inc. ("United") as well as to various international airway carriers affiliated with United. *Id.* ¶¶ 15–16. Approximately two hundred Air Serv employees working at ORD are currently represented by the Union. *Id.* ¶ 21. These employees work as wheelchair agents and electric cart drivers at Terminals 2 and 5 of ORD. *Id.*

The most recent collective bargaining agreement between Air Serv and the Union became effective in June 2013 and expired in June 2016. *See id.* For the past several months, Air Serv and the Union have been engaged in negotiations over a new collective bargaining agreement. *Id.* ¶¶ 23–25. Unable to arrive upon mutually agreeable terms, the Union announced in mid-November the possibility of a strike involving hundreds of employees at ORD, including Air Serv employees. *Id.* ¶ 27. On November 21, 2016, the Union confirmed that a strike would take place on November 29, 2016. *Id.* ¶ 27.

Seeking to avoid the strike, Air Serv filed a complaint and an emergency motion for a temporary restraining order and preliminary injunction before this Court on November 28, 2016. After conducting a hearing, the Court denied Air Serv's motion for the reasons stated on the record in open court. The Court now elaborates upon those reasons in the present Memorandum Opinion and Order.

## **Legal Standard**

A preliminary injunction is an extraordinary remedy that is "never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the USA, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (internal

quotation marks omitted). The party moving for a temporary restraining order or preliminary injunction bears the burden of making a clear showing that it is entitled to the relief it seeks. *See Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

In determining whether to grant a motion for a preliminary injunction, courts engage in an analysis that proceeds in two separate phases: a threshold phase and a balancing phase. *See Girl Scouts*, 549 F.3d at 1085–86. To survive the threshold phase, the party seeking a preliminary injunction must show that it will suffer irreparable harm without the injunction, that traditional legal remedies would be inadequate, and that its claim has a likelihood of success on the merits. *Id.* at 1086. If these threshold requirements are not met, the motion for a preliminary injunction must be denied. *Id.* If, however, the moving party satisfies this initial threshold, the court proceeds to the balancing phase, in which the moving party must demonstrate that the harm that would be caused without an injunction outweighs the harm that would be suffered by the nonmoving party in the event the injunction is granted. *Id.*

## Analysis

Air Serv seeks to enjoin the Union's members from engaging in a strike on the ground that the RLA prohibits the Union from striking in lieu of using other procedures to resolve its dispute with Air Serv. Mem. Supp. at 6–12, ECF No. 8. In response, the Union argues that the Court may not issue an injunction under the RLA because Air Serv is not an entity that falls within the scope of the RLA. Br.

3

Opp. at 6–14, ECF No. 14. The Court agrees with the Union that Air Serv has not met its burden of showing it is entitled to relief under the RLA. The Court therefore denies Air Serv's motion for a temporary restraining order and preliminary injunction.

I.  **Two-Part Jurisdictional Test Under the RLA**

In general, the Norris-LaGuardia Act (NLGA), 29 U.S.C. § 101 *et seq.*, strips courts of jurisdiction to enter injunctions against labor unions in cases arising from labor disputes, "express[ing] a basic policy against the injunction of activities of labor unions." *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 772 (1961). Where a challenged action violates the RLA, however, "the specific provisions of the [RLA] take precedence over the more general provisions of the [NLGA]," allowing a party to seek injunctive relief that would otherwise be barred by the NLGA. *United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO*, 243 F.3d 349, 362 (7th Cir. 2001) (quoting *Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490, 513 (1989)); *see also United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 563 F.3d 257, 274 (7th Cir. 2009). Accordingly, where a party moves for injunctive relief under the RLA, "courts can issue injunctions to enforce the RLA provisions at issue notwithstanding the NLGA." *United Air Lines*, 243 F.3d at 362.

The RLA applies to a company and its employees when the company is "directly or indirectly owned or controlled by" a rail or airway carrier engaged in interstate or foreign commerce. 45 U.S.C. § 151. In making the threshold

4

determination as to whether a company is subject to the RLA, courts have employed a two-part jurisdictional test developed by the National Mediation Board (NMB), the federal agency tasked with administering the RLA. *See, e.g.*, *Paulsen v. PrimeFlight Aviation Servs., Inc.*, 16 CIV 5338 (BMC), 2016 WL 6205796, at *3 (E.D.N.Y. Oct. 24, 2016) (citing cases applying the NMB's two-part test). This test asks, first, whether the functions performed by the company's employees are among those traditionally performed by carrier employees, and second, whether the company is directly or indirectly owned or controlled by a carrier. *See id.*; *Airway Cleaners, LLC*, 41 NMB 262, 267 (2014); *Air Serv Corp.*, 39 NMB 450, 454–55 (2012). Both prongs of this test must be satisfied in order for the RLA to apply. *Airway Cleaners*, 41 NMB at 267.

In assessing whether a company is "controlled" by a carrier for purposes of the second prong of this test, "[f]actors routinely considered . . . are (i) the control over the manner in which the entity conducts its business, including access to the employer's operations and records; (ii) involvement in hiring, firing, and disciplinary decisions; (iii) supervision and direction of the entity's employees in the performance of their job duties; (iv) influence over the conditions of employment; (v) influence over employee training; and (vi) control over uniform and appearance requirements." *Paulsen*, 2016 WL 6205796, at *4; *see also Airway Cleaners*, 41 NMB at 267–68 (considering similar factors). Not all of these factors must be present in order to satisfy this prong of the two-part jurisdictional test. *See Paulsen*, 2016 WL 6205796, at *4. Rather, the NMB has explained that balancing these

factors assists the decisionmaker in determining whether a company merely has a typical contractor relationship with an airway carrier, such that the company does not fall within the jurisdiction of the RLA. *See Airway Cleaners*, 41 NMB at 268.

Although the trends emerging from NMB decisions in this area have oscillated over the past several decades, recent NMB decisions have generally concluded that companies providing airline-related services as independent contractors do not fall within the RLA's jurisdiction.[1] In this regard, the NMB's decision in *Airway Cleaners*, 41 NMB 262 (2014), provides an instructive example. In that case, the NMB considered whether Airway Cleaners, LLC—a company that provides airport cleaning and maintenance service—was subject to the RLA. *Id.* at 262–63. Focusing on the second prong of the two-part jurisdictional test, the NMB concluded that airway carriers did not exercise sufficient control over Airway and its employees to bring Airway within the RLA's jurisdiction. *Id.* at 267–69. In reaching this decision, the NMB emphasized the fact that Airway had its own human resources department and was responsible for hiring, firing, and disciplining its own employees. *Id.* at 268. The NMB also explained that when a carrier merely exercises "the kind of control exercised by a carrier over a subcontractor"—for example, by setting safety and performance standards, providing equipment, or

---

[1] For a comprehensive survey of NMB decisions in this area, *see* Brent Garren, *NLRA and RLA Jurisdiction over Airline Independent Contractors: Back on Course*, 31 ABA J. Lab. & Emp. L. 77, 77–79, 91–107 (2015) (describing NMB decisions as adopting a restrictive approach to RLA jurisdiction from 1980 to 1996, taking a more expansive approach in the late 1990s and the post–9/11 era, and returning to a restrictive approach in more recent years by issuing decisions that, in the view of the article's author, have "do[ne] much to return to a correct understanding of RLA jurisdiction").

reporting misconduct—then the carrier's exercise of control is "not sufficient to establish RLA jurisdiction." *Id.*

Another illustrative example is *Air Serv Corp.*, 39 NMB 450 (2012). In that case, the NMB considered whether airline carriers exercised sufficient control over Air Serv employees, who provided shuttle transportation services, to bring Air Serv within the RLA's jurisdiction. *Id.* at 450–52. The NMB noted that Air Serv supervised and trained its own employees, retained authority to make hiring and firing decisions (though air carriers could make recommendations regarding these decisions), and required its employees to "wear Air Serv uniforms adorned with the Air Serv logo." *Id.* at 457–58. Based upon these facts, the NMB concluded that RLA jurisdiction was lacking.

Judicial decisions addressing RLA jurisdiction, albeit sparse, have reached similar outcomes. Most recently, the court in *Paulsen v. PrimeFlight Aviation Services, Inc.*, 16 CIV 5338 (BMC), 2016 WL 6205796 (E.D.N.Y. Oct. 24, 2016), declined to find RLA jurisdiction over PrimeFlight, an independent contractor that provides baggage handling, checkpoint, and wheelchair services at airports. In that case, the airline carrier JetBlue exercised a degree of control over PrimeFlight's employees by dictating work schedules and hours, auditing PrimeFlight's books and records, retaining authority to demand that PrimeFlight remove certain employees from the workplace, interacting with PrimeFlight employees on a daily basis, and providing equipment. *Id.* at *5. Drawing on recent NMB decisions, the court in *Paulsen* found that JetBlue's policies allowing it to exercise some control over

PrimeFlight's employees were insufficient to bring PrimeFlight within the RLA's jurisdiction. *Id.* at *4–6.

Although neither *Paulsen* nor the decisions of the NMB are binding on this Court, they are persuasive authorities that shed light on the case at hand. Thus, in turning to address whether United exercises sufficient control over Air Serv and its employees to bring Air Serv within the RLA's jurisdiction, the Court bears these recent decisions in mind.

## II. United's Insufficient Control over Air Serv and Its Employees

In support of its motion for a temporary restraining order and preliminary injunction, Air Serv argues that United exercises sufficient control over its employees to allow Air Serv to invoke the RLA's jurisdiction. Mem. Supp. at 16–20. The Union argues otherwise. Resp. at 7–14. Having reviewed the parties' briefs and heard their arguments at the hearing on November 28, 2016, the Court concludes that the balance of the relevant factors weighs against a finding of RLA jurisdiction in this case.

First, Air Serv argues that United exercises sufficient control over the manner in which Air Serv conducts its business because United establishes performance standards for Air Serv's employees, sets hourly wage rates, provides operational space, and requires Air Serv to make various records and documents available for inspection. These forms of control, however, are generally regarded as routine practices in a typical contractor relationship that are insufficient to establish RLA jurisdiction. *See Airway*, 41 NMB at 268; *Paulsen*, 2016 WL

6205796, at *5. In addition, the Union introduces several other facts suggesting that Air Serv does, in fact, maintain control over the manner in which it conducts its business. For example, the Union points out that Air Serv provides its employees with its own equipment, maintains its own Air Serv employee handbook, and makes its own personnel decisions. Br. Opp. at 12–13. Thus, on balance, the Court does not find that this factor weighs in favor of RLA jurisdiction.

Second, Air Serv points to United's "right to require that Air Serv remove any employee from performing services under its account," contending that this policy gives United sufficient control over Air Serv's hiring and firing practices. Mem. Supp. at 17. This argument is unpersuasive, because United can request only that the employee in question be assigned to another account; it is Air Serv that makes final decisions regarding whether that individual should be terminated or disciplined. Certainly, it would not be unreasonable for Air Serv to fire an employee who has failed to satisfy whatever requirement one of its largest customers may impose upon Air Serv. But in the end it is Air Serv that makes this determination.

United's employee removal policy is substantially similar to the airline carrier's policy in *Paulsen*, in which the court explained that a carrier's influence over removal of an employee is not tantamount to an ability to officially fire the employee. *Paulsen*, 2016 WL 6205796, at *5; *see also Air Serv*, 39 NMB at 457–58 (noting that a company's authority to make hiring and firing decisions weighed against a finding of RLA jurisdiction, even when air carriers could make recommendations regarding these decisions). Because Air Serv ultimately retains

9

authority over the hiring, firing, and discipline of its employees, this factor weighs against a finding of jurisdiction under the RLA.

Next, Air Serv claims that United "often directs or supervises the work performed by Air Serv employees." Mem. Supp. at 16. While a carrier's supervision of employees can weigh in favor of RLA jurisdiction, a close look at the facts presented in Air Serv's brief and exhibits reveals that United does not, in fact, directly supervise Air Serv's employees. Rather, the activities that Air Serv characterizes as "supervision" merely entail interactions between Air Serv's wheelchair agents and United's personnel regarding where certain passengers should be transported or where baggage should be placed when bag belts are not in service. *Id.* (citing Ex. 1, Shira Decl. ¶ 8). These types of daily interactions between Air Serv's and United's respective employees do not weigh in favor of RLA jurisdiction. *See Paulsen*, 2016 WL 6205796, at *5. Furthermore, the Union asserts (and Air Serv does not dispute) that "Air Serv employees receive direction and supervision from Air Serv supervisors who wear clothing with Air Serv logos" and that "the Air Serv Employee Handbook establishes this direct supervisory relationship between Air Serv's supervisors and employees." Br. Opp. at 12–13. In light of the facts raised by each of the parties as to this issue, the Court finds that this factor does not weigh in favor of RLA jurisdiction.

With respect to training, Air Serv contends that United exercises sufficient control over Air Serv because it employs a "'train-the-trainer' process, whereby United initially trains an Air Serv trainer who is then responsible for training other

Air Serv personnel." Mem. Supp. at 16. While United's "train-the-trainer" process may indeed give United some degree of influence over Air Serv's employees' training, Air Serv ultimately trains its own personnel, and so it is Air Serv that predominantly controls its employees' training process. Thus, this factor also does not weigh in favor of RLA jurisdiction.

Finally, Air Serv relies on the fact that United establishes appearance standards that apply equally to Air Serv's employees and United's own employees. The Union points out, however, that Air Serv employees wear uniforms bearing Air Serv's logos. Br. Opp. at 13. Where a company requires its employees to wear clothing bearing the company's own logos, rather than the airline carrier's logos, this factor weighs against a finding of RLA jurisdiction. *See Air Serv*, 39 NMB at 457–58.

In sum, Air Serv has not established that it was sufficiently controlled by United to bring Air Serv within the RLA's jurisdiction. Because jurisdiction under the RLA is lacking, the NLGA bars this Court from entering an injunction enjoining the Union from engaging in a strike. *See* 29 U.S.C. § 101; *United Air Lines*, 243 F.3d at 362. Air Serv therefore is not entitled to the injunctive relief that it seeks.

## Conclusion

For the reasons stated herein, Air Serv's motion for a temporary restraining order and preliminary injunction [6] is denied.

**IT IS SO ORDERED.**          ENTERED   12/2/16

_____
**John Z. Lee
United States District Judge**